ADAMS, Executor, Appellant, vs. CONGDON, Respondent.*
WILL OF MILLER: CONGDON and another, Respondents, vs.
ESTATE OF MILLER, Appellant.*

*May 8—June 15, 1951.*

\* Motions for rehearing denied, with $25 costs in one case, on
September 11, 1951.

For the appellants there were briefs by *Morrissy, Morrissy & Zastrow* of Elkhorn, attorneys, and *Cavanagh, Mittelstaed, Sheldon & Heide* of Kenosha of counsel, and oral argument by *William A. Sheldon.*

For the respondents there was a brief by *Thorson, Seymour & Lehman* of Elkhorn, and oral argument by *A. T. Thorson.*

BROWN, J.  The evidence establishes that in 1941 Miller and his wife came as guests to the religious camp owned and operated by Congdon.  In 1948 Congdon incorporated the business and the terms Congdon, the camp, the park, and the association are used interchangeably.  Mr. and Mrs. Miller liked the place and took employment there.  They were then in their sixties.  In the summer of 1942 Mr. Miller became seriously ill and it developed that he had a cancer.  Thereafter he did little work.  He and his wife had a home in joint tenancy worth $3,000 and some other property, which when Miller died consisted of $6,737.57 cash.  The greater part of each year they lived with Dr. Congdon and were treated as though they were members of his family.  For reasons which are in dispute Congdon gave Jay Miller the judgment note previously described.

Appellant's first contention is that the trial court committed error in vacating the cognovit judgment and granting

trial on the merits and he submits that Congdon's petition did not sufficiently disclose a meritorious defense. The motion to vacate was accompanied by Congdon's proposed, verified answer in which it was alleged that the $5,000 note was signed and delivered as part of an oral agreement made in September, 1942, whereby he promised to maintain and care for Mr. and Mrs. Miller during their lifetime, in return for which Mr. Miller would leave all his property to Congdon; and the note was given as security to the Millers that the agreement by Congdon and the association would be performed. The proposed answer further alleged that the support had been furnished, which operated as payment of the note, but Mr. Miller had willed the property to others and therefore there was a failure of consideration for the note. Congdon also filed an affidavit conforming to sec. 269.465, Stats., that he had stated his case fully to his counsel and had been advised that he had a meritorious defense. We think that a meritorious defense is alleged in sufficient detail to enable the trial court without abuse of discretion to vacate a judgment previously entered without process.

With this point out of the way the issue comes down to the sufficiency of the evidence to sustain the Congdon version of the note as set forth in his answer and the findings of fact by the trial court which conformed to it. Much incompetent evidence was received, subject to appellant's objections. There was, however, the competent testimony of several disinterested persons that Mr. Miller had said to each of them that he had made an agreement to leave his property to the association and it would take care of him and his wife as long as they lived, and that Congdon had delivered a note to the Millers as security that the support would be furnished. The witnesses were less explicit on details than could be wished but we consider that this was a matter going to the weight of the testimony in the good judgment of the trial court. We cannot hold that the evidence had so little proba-

tive force that the trial court's findings that there was such an agreement, so secured, must be set aside for lack of sufficient evidence to sustain them. Accordingly, the promise to support having been performed, the obligation of the note, as the trial court found, has been satisfied and the judgment dismissing the action upon it should be affirmed.

Respecting the claim of Congdon and the association against the Miller estate, the issue again concerns the sufficiency of the evidence. The testimony previously discussed establishes the agreement for the support of Mr. and Mrs. Miller. The agreement was void under the statute of frauds, secs. 240.06, 241.02 (1), and sec. 235.01 (2), Stats. See also Restatement, 1 Contracts, p. 232, sec. 178, p. 254, sec. 193. Specific performance cannot be required and no damages can be recovered for its breach, *Rosenthal v. Pleck* (1918), 166 Wis. 598, 166 N. W. 445, but the parties who gave value in performance of the void contract may have that value returned to them. Restatement, Restitution, p. 194, sec. 47. The support furnished the Millers was found on sufficient evidence to be worth $5,850 and the claim against the estate was properly allowed in that amount.

The balance of the claim, consisting of cash given Jay Miller and the payment of his personal bills was disallowed. These went beyond the requirements of support and maintenance. They could not, then, be included in the amount for which restitution is allowed. There was evidence that Miller paid bills and made purchases in behalf of Congdon and the association at different times and the money given him may have been to reimburse him. We are unable to say that the competent evidence in its support of this part of the claim is of such weight that it was error for the learned trial court to conclude that the proof was insufficient. The judgment on the claim should be affirmed.

*By the Court.*—Judgments affirmed.

HUGHES, J. (*dissenting*). As stated in the majority opinion, Mr. and Mrs. Miller originally came as guests in

1941 to the camp owned and operated by Congdon. Later they took employment there. While Mr. Miller became ill with cancer in 1942, there is nothing to indicate that the relationship between the Millers and Congdon changed.

Four months before Miller died he caused judgment upon the note to be entered against Congdon. In April, 1948, Miller died.

Congdon moved to have the judgment vacated and set aside. He filed a claim in the estate for specific performance of a contract whereby Miller agreed to leave his entire estate to Congdon and, in the alternative, for $14,050 alleged to be the value of the board, lodging, and care furnished to Miller and his wife during their lifetimes.

The estate, as found by the trial court, has the value of approximately $10,000. It is noteworthy that if the $5,000 note of Congdon is added, the estate would be approximately $14,050. I am of the opinion that the size of Congdon's claim was based upon his knowledge of the estate. It certainly was not based upon the value of the services rendered, which were found by the court to have been worth $5,850.

The proofs offered by Congdon were, in my opinion, insufficient to overcome the natural presumption which follows from the execution, delivery, and payment of interest upon the note to Miller until the time of his death.

The effect of the judgment is to give Congdon substantially all of the estate of Jay Miller.

I cannot agree with the decision reached by the court. It is inconceivable to me that Congdon would furnish room, board, and care to the Millers upon a bare promise that they would leave their estate to him at death, and, in addition, would give them a note in the amount of $5,000 as a guaranty that he would continue to perform his part of the contract. If they had conveyed their property, then a note in the nature of a bond might be sensible.

The natural circumstances surrounding this transaction are such as to render Congdon's testimony incredible.